# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Astornet Technologies, Inc.

## DEFENDANTS
BAE Systems Inc., NCR Government Systems, LLC, MorphoTrust USA, LLC

**(b)** County of Residence of First Listed Plaintiff: **Montgomery**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Arlington**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Geoffrey Mason, Esq.,
Moarbes LLP, 2200 Pennsylvania Ave, NW Fourth Floor East Wash DC
(202) 507-5720

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☒ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** | ☐ 462 Naturalization Application | | |
| | / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 USC 271

Brief description of cause:
Patent infringement of U.S. Pat. No. 7,639,844

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE: Honorable Roger W. Titus
DOCKET NUMBER: 12-cv-00740

DATE: 1/27/2014

SIGNATURE OF ATTORNEY OF RECORD: /s/ Geoffrey Mason, Esq., Bar Number 15,772

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| ASTORNET TECHNOLOGIES, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BAE SYSTEMS INC., ) <br> NCR GOVERNMENT SYSTEMS, LLC, ) <br> and MORPHOTRUST USA, LLC ) <br> ) <br> Defendants. ) | Civil Action No. _____ <br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Astornet Technologies Inc. ("Astornet") files this Complaint against Defendants BAE Systems, Inc. ("BAE"), NCR Government Systems, LLC ("NCR") and MorphoTrust USA, LLC ("MorphoTrust"), based upon actual knowledge as to itself and its own actions, and on information and belief as to all other persons and events, as follows:

**Parties**

1.  Astornet is a Maryland Corporation with its principal place of business in Gaithersburg, MD. Astornet is the sole exclusive licensee of, and owns all right, title, and interest to litigate in this matter U.S. Pat. No. 7,639,844 (the '844 patent), referred to below as the '844 Patent.

2.  BAE is a Delaware corporation, with its principal place of business at 1101 Wilson Boulevard, Suite 2000, Arlington, Virginia, 22209. BAE engages in the development, manufacture and distribution of products and services for U.S. air, land and naval forces, as well as security solutions. BAE may be served with process by service

on its registered agent for service, the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

3. NCR is a Delaware LLC with its principal place of business at 20370 Seneca Meadows Parkway, Germantown, Maryland, 20875. NCR provides government agencies with information technology products and services. NCR may be served with process by service on its registered agent for service, the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.

4. MorphoTrust is a Delaware LLC with its principal place of business at 296 Concord Road, Suite 300, Billerica, MA 01821. MorphoTrust provides identity solutions and services. MorphoTrust may be served with process by service on its registered agent for service, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

**Jurisdiction and Venue**

5. This claim arises under the United States patent laws, 35 U.S.C. § 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. BAE has transacted business in Maryland, and has caused tortious injury in Maryland by an act or omission outside Maryland and derived substantial revenue from its activities in Maryland by establishing multiple BAE offices and/or facilities in Maryland, including establishing (1) BAE's Support Solutions Headquarters in Rockville, Maryland, (2) BAE's Intelligence & Security in Annapolis Junction, Maryland, and (3) BAE'S Intelligence & Security at two locations in Columbia, Maryland.

2

7. NCR has transacted business in Maryland, and has caused tortious injury in Maryland by an act or omission outside Maryland and derived substantial revenue from its activities in Maryland by establishing its primary offices in Germantown, Maryland.

8. MorphoTrust has transacted business in Maryland, and has caused tortious injury in Maryland by an act or omission outside Maryland and derived substantial revenue its activities in Maryland by establishing multiple MorphoTrust offices and/or facilities in Maryland, including establishing (1) IdentoGo by MorphoTrust in two Baltimore, Maryland locations; (2) IdentoGo by MorphoTrust in Towson, Maryland; (3) IdentoGo by MorphoTrust in Berlin, Maryland; and (4) IdentoGo by MorphoTrust in Hagerstown, Maryland.

9. Venue is proper in this District and Division, under 28 U.S.C. §§ 1391 and 1400. BAE, NCR, and MorphoTrust reside within this District.

**Factual Background**

10. Astornet is committed to providing the highest quality of customized products and services that meet the needs of government organizations and corporations. (Ex. 1 at 1). Astornet provides a full range of technology systems and services including software solutions, consulting and system integration. (*Id*. at 2). Astornet's customers include the Federal Aviation Administration, BWI Marshall Airport, the Maryland Department of Education, and the United States Department of Transportation. (*Id*.).

11. BWI in particular retained Astornet in late 2007 to meet new Transportation Security Administration ("TSA") requirements to improve security at the gates, (*id.* at 3), and in particular, develop a system to increase security while maintaining

an efficient entry/exit process, (*id.*). For this project, the Astornet team created a touch screen solution that was able to verify credentials authenticity, perform an instant security check for all persons entering the airport, and deliver a vehicle certificate. (*Id.*). Astornet also provided the airport police with a wireless device capable of authenticating certificates at any point within the airport. (*Id.*). As a result of this work, BWI vehicular gate security was dramatically increased and the system was able to efficiently handle and properly manage entry volume. (*Id.*).

12. On August 27, 2007, Astornet filed a patent application entitled "Airport Vehicular Gate Entry Access System" naming as its sole inventor "Michael A. Haddad." (Ex. 2 at 1).

13. On December 29, 2009, the United States Patent and Trademark Office (the "PTO") granted the '844 patent based on this application (*Id.* at 2), which claims as its invention: "An automated access control system for securing airport vehicular gates and airport sterile areas comprising:" a number of elements, including that "upon a credential reading, the . . . access control system automatically determines the source of the credential data record, and automatically extracts personal information to be checked against a security list, TSA NO-FLY list, SELECTEE list, other alternative credentials" and that the system further "upon the credential authentication, . . . automatically extracts authentication information from the authentication data record, and subsequently displays a warning window, as a result of the individual credentials match and ID forgery risks rating contained in the authentication data record." (*Id.* at col. 4, ll. 67 to col. 5, ll. 37).

14. The PTO Examiner noted that he was granting the '844 patent because none of the prior art considered by the Examiner "discloses" or provided any "reason or

4

motivation" that would render "obvious[]" the invention claimed in the '844 patent. (Ex. 3 at 5). Patents can only be granted by the PTO for new, useful and non-obvious inventions considered in light of the most relevant "prior art", or technical work that came before the work that is the subject of a patent application. *See, e.g.,* 35 USC § 102; 35 U.S.C. § 103. As the '844 patent itself notes, "[a]irport vehicular entry gates rely on human intervention and manual data entry and are prone to excessive error rates, lower security standards, increased inefficiencies and decreased reliability." (Ex. 2 at 1). Mr. Haddad improved upon BWI's systems markedly by "automatically" performing the steps claimed in the '844 patent, (*id.* at col. 4, ll. 67 to col. 5, ll. 37), something which had never been done before and was not at all "obvious[]" to one of ordinary skill in the art, (Ex. 3 at 5).

15. One of the main difficulties of such a system, for example, was accurately comparing names of passengers that could be translated into English with many different spellings. As a well known example, the one time leader of Libya, Colonel Gaddafi, had his name spelled in newspapers in this form, but also one can find many examples of the same individual having his name spelled as Kadafi and Qaddafi as well. This is not unusual; there is no universally accepted authority for transliterating Arabic names. However, to a human being, all of the spellings of Gaddafi can be seen to be phonetically related. To a computer, by contrast, phoenetic relationships are very difficult to detect. Accordingly, one of the key improvements Astornet made to the state of the art in this area was to develop an arabic language phonetic comparison algorithm that in a number of cases was the difference between catching a match with the TSA no-fly list or not. Astornet's BWI system thus removed human security personnel from the equation but did

5

so without sacrificing accuracy on phonetic comparisons that can prove crucial to flagging a particular individual on the No Fly list.

16. In June 2009, seeking to build on its success with Astornet's BWI system, Astornet sought to provide its systems in response to TSA requests for bids from government contractors for improved security systems, in particular a system the TSA named the Credential Authentication Technology-Boarding Pass Scanning System (CAT/BPSS). After presenting the TSA with its CAT/BPSS proposal, Astornet was selected for testing and advanced to the next stage of the process. At that stage, the TSA required all of the CAT/BPSS bidders to provide 5 systems in kiosks at a demonstration facility, free of charge. This was a substantial burden on Astornet, as evidenced by the fact that the TSA ultimately purchased 10 systems with five months of support at the earliest stage of the CAT/BPSS program for $1.97 million, or approximately $200,000 a system. (Ex. 5 at 2). Accordingly, participating in this round required an outlay of nearly $1,000,000 in finished systems and support, with no commitment by the TSA to purchase anything.

17. Astornet accordingly attempted to participate in the demonstration with 5 systems in parts, and observed the competing systems being offered by defendants BAE, NCR and MorphoTrust. Unfortunately Astornet was unsuccessful with its bid for the initial CAT/BPSS contracts, at least in part owing to its failure to provide the requisite systems in a kiosk at this demonstration.

18. The CAT/BPSS contracts were instead ultimately awarded to the three defendants. (Ex. 4 at 2). In September 2011, each defendant was awarded a CAT/BPSS contract providing for orders totaling up to $79 million under each contract (Ex. 4 at

A002, A006, at A009), as well as an initial order of 10 systems from each defendant for approximately $2 million, including five months of support, for a pilot program totalling $6 million.  (Ex. 5 at 2).  Defendant MorphoTrust participated in the contracting process as a now defunct entity named Trans Digital Technologies LLC, but in later testimony before Congress by its Vice President and General Counsel, MorphoTrust represented that MorphoTrust held the resulting contract.  (*Id.*).

19.     Notwithstanding their success in obtaining the initial contracts, the initial pilot program with BAE, NCR, and MorphoTrust did not go well, and in June 2012, the TSA decided to delay procurement of CAT/BPSS.  (Ex. 6 at 1).  The TSA conducted additional research on the matter in 2013, (Ex. 7 at 1), and re-solicited proposals for a slightly revised CAT/BPSS system, which proposals were due on January 21, 2014.  BAE, NCR, and MorphoTrust all submitted proposals for this revised system, and Astornet likewise had submitted such a proposal using the same team and essentially the same system it proposed previously.

20.     BAE, NCR and MorphoTrust's original and revised CAT/BPSS systems all infringe Astornet's '844 patent.

### Defendants' Original and Revised CAT/BPSS Systems All Infringe Astornet's '844 Patent

21.     Claim 1 of the '844 patent first requires "An automated access control system for securing airport vehicular gates and airport sterile areas comprising; a standardized credential reader means for reading a credential encoded with personal identification . . . ."  Defendants' original and revised CAT/BPSS systems (now referred to as CAT systems, but for clarity we will use the "original" and "revised" CAT/BPSS systems herein to maintain the original terminology) all meet this limitation by having a

7

reader that can read a boarding pass, which is encoded with personal identification including to the passenger's name.

22. Claim 1 next requires this system "be used at entry point into the airport sterile areas." Defendants' original and revised CAT/BPSS systems all meet this limitation because these systems were to be used on passengers, visitors and transportation workers before entering a sterile/secure area.

23. Claim 1 next requires this system to "automatically collect[] data to build individual real time records." Defendants' original and revised CAT/BPSS systems all meet this limitation because these systems all scanned boarding passes and built the data in real time. TSA specified that in fact no private data should be stored in the system to comply with the Private Individual Information Act.

24. Claim 1 next requires the system to have "a software application for recovering information from the standardized credential reader." Defendants' original and revised CAT/BPSS systems all meet this limitation because these systems all had such software applications; without such applications, they could not automate their systems as required by CAT/BPSS.

25. Claim 1 next requires a system "wherein one or more of the following processing is performed: real time records are checked searching for a credential collected information match . . . ." Defendants' original and revised CAT/BPSS systems all meet this limitation because these systems all were required to check a passenger's boarding pass credential information against other credentials provided by the passenger such as a drivers license or a passport.

26. Claim 1 next requires the system wherein "admission is processed as entry or re-entry of the individuals." Defendant's original and revised CAT/BPSS systems all meet this limitation because these systems do not store any personal information, and so all admissions were processed "as entry . . . .of the individuals" as required.

27. Claim 1 next requires "an ID authenticator, wherein a credential to be authenticated is presented." Again, Defendants' original and revised CAT/BPSS systems all meet this limitation because these systems were all required to match a boarding pass identification with a standard form of identifications for passengers such as drivers licenses or passports.

28. Claim 1 further requires that the system "analyze" a "credential physical aspect and embedded security features to determine the possibility of any tampering or forgery and provide an authenticity risk rating." The Defendants' original and revised CAT/BPSS systems all meet this limitation because these systems all used the same commercial ID authenticator, which includes an authenticator database that has a record of all state drivers license ID templates, including holographic features, small transparent pictures of the individuals that can only be seen in the infrared, and similar federal passport security features, all of which the authenticator analyzes to analyze the validity of the identification and provide an authenticity risk rating.

29. Claim 1 further requires "said ID authenticator comprises means to read non-encoded credentials. . . ." The Defendants' original and revised CAT/BPSS systems all meet this limitation because the commercial ID authenticator used by all of the defendants is able to accept manual input of credential information on IDs that for

9

whatever reason is non-machine readable, which was also a requirement of the CAT/BPSS specification.

30. Claim 1 further requires "said ID authenticator generates an authentication data record comprising presented credential information and authentication rating . . . " The Defendants' original and revised CAT/BPSS systems all meet this limitation because the commercial ID authenticator used by all of the defendants generates an authentication data record which includes the presented credential information as well as an authentication rating.

31. Claim 1 further requires the system to have "a central processing unit for receiving information from the standardized credential reader and the ID authenticator." The Defendants' original and revised CAT/BPSS systems all meet this limitation because without such a central processing unit, the system would not be automated as required by CAT/BPSS.

32. Claim 1 further requires that "upon a credential reading, the automated access control system automatically determines the source of the credential data record, and automatically extracts personal information to be checked against a security list, TSA No-Fly list, selectee list, other alternative credentials. . . ." The Defendants' original and revised CAT/BPSS systems all meet this limitation because they were all required to read a passenger's credential, automatically recognize the credential, automatically extract the personal information from the credential, and check it against "other alternative credentials," i.e. a boarding pass, drivers licenses and passports. The Revised CAT/BPSS systems are also required to check the personal information against a TSA supplied list, off a database.

33. Claim 1 further requires that "upon the credential authentication, the automated access control system automatically extracts authentication information from the authentication data record and subsequently displays a warning window, as a result of the individual credentials match . . ." The Defendants' original and revised CAT/BPSS systems all literally or equivalently meet this limitation because they were all required to provide a clear alert to the operator if there was no credential match or if the identification was suspect.

34. Claim 1 finally requires there to be an "ID forgery risk rating contained in the authentication data record." The Defendants' original and revised CAT/BPSS systems all meet this limitation because they all used the same commercial authenticator, which produces a forgery risk rating in the authentication data record.

35. Accordingly, all elements of Claim 1 are found in Defendants' original and revised CAT/BPSS systems, and thus at least Claim 1 of the '844 patent is infringed.

**Count 1 – BAE's Infringement of the '844 Patent**

36. Astornet incorporates by reference the material factual allegations above.

37. BAE has infringed and is continuing to infringe the '844 Patent by engaging in acts including making, using, selling, or offering to sell within the United States, products that embody the patented invention described and claimed in the '844 Patent, including BAE's original and revised CAT/BPSS systems.

38. BAE's activities have been without express or implied license from Astornet.

39. BAE will continue to infringe the '844 Patent unless enjoined by this Court. As a result of the BAE's infringing conduct, Astornet has suffered, and will

11

continue to suffer, irreparable harm for which there is no adequate remedy at law. Astornet is entitled to permanent injunctive relief against such infringement, under 35 U.S.C. § 283.

40. As a result of the infringement of the '844 Patent, Astornet has been damaged, will be further damaged, and is entitled to be compensated for such damages, pursuant to 35 U.S.C. § 284, in an amount to be determined at trial.

### Count 2 – NCR's Infringement of the '844 Patent

41. Astornet incorporates by reference the material factual allegations above.

42. NCR has infringed and is continuing to infringe the '844 Patent by engaging in acts including making, using, selling, or offering to sell within the United States, products that embody the patented invention described and claimed in the '844 Patent, including NCR's original and revised CAT/BPSS systems.

43. NCR's activities have been without express or implied license from Astornet.

44. NCR will continue to infringe the '844 Patent unless enjoined by this Court. As a result of the NCR's infringing conduct, Astornet has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law. Astornet is entitled to permanent injunctive relief against such infringement, under 35 U.S.C. § 283.

45. As a result of the infringement of the '844 Patent, Astornet has been damaged, will be further damaged, and is entitled to be compensated for such damages, pursuant to 35 U.S.C. § 284, in an amount to be determined at trial.

**Count 3 – MorphoTrust's Infringement of the '844 Patent**

46. Astornet incorporates by reference the material factual allegations above.

47. MorphoTrust has infringed and is continuing to infringe the '844 Patent by engaging in acts including making, using, selling, or offering to sell within the United States, products that embody the patented invention described and claimed in the '844 Patent, including MorphoTrust's original and revised CAT/BPSS systems.

48. MorphoTrust's activities have been without express or implied license from Astornet.

49. MorphoTrust will continue to infringe the '844 Patent unless enjoined by this Court. As a result of the MorphoTrust's infringing conduct, Astornet has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law. Astornet is entitled to permanent injunctive relief against such infringement, under 35 U.S.C. § 283.

50. As a result of the infringement of the '844 Patent, Astornet has been damaged, will be further damaged, and is entitled to be compensated for such damages, pursuant to 35 U.S.C. § 284, in an amount to be determined at trial.

**Jury Trial Demand**

51. Astornet demands a trial by jury on all appropriate issues.

**Prayer for Relief**

Therefore, upon final hearing or trial, plaintiff Astornet prays for the following relief:

(a) A judgment that BAE has infringed the '844 Patent;

(b) A judgment that NCR has infringed the '844 Patent;

(c) A judgment that MorphoTrust has infringed the '844 Patent;

(d) A judgment and order permanently restraining and enjoining BAE, its directors, officers, employees, servants, agents, affiliates, subsidiaries, others controlled by them, and all persons in active concert or participation with any of them, from further infringing the '844 Patent;

(e) A judgment and order permanently restraining and enjoining NCR, its directors, officers, employees, servants, agents, affiliates, subsidiaries, others controlled by them, and all persons in active concert or participation with any of them, from further infringing the '844 Patent;

(f) A judgment and order permanently restraining and enjoining MorphoTrust, its directors, officers, employees, servants, agents, affiliates, subsidiaries, others controlled by them, and all persons in active concert or participation with any of them, from further infringing the '844 Patent;

(j) A judgment and order requiring BAE, NCR, and MorphoTrust to pay damages to Astornet adequate to compensate it for BAE, NCR, and MorphoTrust's wrongful infringing acts, in accordance with 35 U.S.C. § 284 and 35 U.S.C. § 289;

(k) A judgment and order requiring BAE, NCR, and MorphoTrust to pay to Astornet pre-judgment interest under 35 U.S.C. § 284, and post-judgment interest under 28 U.S.C. § 1961, on all damages awarded; and

(l) Such other costs and further relief, to which Astornet is entitled.

Dated: January 27, 2014                                Respectfully submitted,

                                                       /s/ Geoffrey Mason, Esq.
                                                       Geoffrey Mason, Esq., Bar No. 15772
                                                       Moarbes, LLP
                                                       2200 Pennsylvania Avenue, NW
                                                       Fourth Floor, East
                                                       Washington, D.C.  20037
                                                       Direct: (202) 507-5720
                                                       Fax: (202) 400-3857
                                                       gmason@moarbes.com